LILLIE HUGHES *v.* MILLERS' MUT. FIRE INS. CO.*   .

(*Knoxville.* September Term, 1922.)

1. INSURANCE. Failure in application to fill blank as to incumbrances neither affirmance nor denial.

A failure to fill in a blank in an application for fire insurance calling for the amount of incumbrance against property is neither an affirmance nor denial of the existence of an incumbrance. (*Post, pp.* 167, 168.)

Cases cited and approved: Parker v. Otsego County Farmers' Co-op. F. Ins. Co., 168 N. Y., 655; Jersey City Ins. Co. v. Carson, 44 N. J. Law, 210.

2. INSURANC⊏. Statement of fee-simple title not false, though property mortgaged.

A statement in an application for fire insurance that applicant had title in fee simple was not a false statement, although there was in existence a trust deed by which applicant had conveyed the property to protect persons who had secured indebtedness for applicant, since a fee-simple estate may be either legal or equitable. (*Post, pp.* 168-171.)

3. ESTATES. Fee-simple estate may exist though property incumbered.

A fee-simple estate may be either legal or equitable, and it may be incumbered and still be a fee-simple estate. (*Post, pp.* 168-171.)

Cases cited and approved: Loventhal v. Home Ins. Co., 112 Ala., 108; Dupreau v. Hibernia Ins. Co., 76 Mich., 615.

Case cited and distinguished: Imperial, etc., Ins. Co. v. Dunham, 117 Pa. 460.

4. INSURANCE. Incumbrance on insured property not material to risk.        . `

---

*On mortgage or instrument given as security asbreach of condition as to sole and unconditional ownership, see note in L. R. A. 1915D, 812.

Hughes v. Millers' Mut. Fire Ins. Co.

The existence of a mortgage, vendor's lien, or retained title on in-sured property, is not material to the risk, and a failure to dis-close such an incumbrance will not avoid a policy of fire insur-ance, even though conditioned on the insured being the sole and unconditional owner.   (*Post, pp.* 171, 172.)

Acts cited and construed: Acts 1895, sec. 22, ch. 160.

Cases cited and approved: Delahay v. Memphis Ins. Co., 27 Tenn., 684; Manhattan Ins. Co. v. Barker, 54 Tenn., 503; Insurance Co. v. Crockett, 75 Tenn., 725; Light v. Insurance Co., 105 Tenn., 480; Ins. Co. v. Estes, 106 Tenn., 472; Ins. Co. v. Whitaker, 112 Tenn., 151.

Code cited and construed: Sec. 3306 (T.-S.).

5. **INSURANCE.** Silence avoiding fire policy must be matter material to risk.

Silence which will avoid a fire policy must be about a matter material to the risk, and in this connection Thompson's-Shannon's Code, section 3306, does not apply to silence, but deals only with misrepresentations and warranties.   (*Post, p.* 179.)

Case cited and approved: Light v. Ins. Co., 105 Tenn., 480.

### FROM BLEDSOE.

Appeal from the Chancery Court of Bledsoe County.— HON. T. L. STEWART, Chancellor.

SOLON L. ROBINSON, for plaintiff.

MURRAY & McCALLA, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The complainant was the owner of a flour mill near Pike-ville, Tenn., and on the 21st day of August, 1920, procured

a policy of insurance from defendant against fire in the sum of $4,000; $2,000 on the building, $1,000 on the machinery, and $1,000 on stock. On March 21, 1921, the mill building and contents, both machinery and stock, were destroyed by fire. Negotiations were had between the parties, but defendant refused to pay the loss, and this suit was brought for the full amount of the policy. Defendant answered and denied liability for reasons hereafter appearing. Proof was taken, and there was a decree below for the amount of the policy, from which defendant has appealed.

Before the issuance of this policy, the complainant made a written application for same, in which, among others, the following questions and answers appear:

"Are you the sole owner of the property to be insured?

"Yes.

"Have you title in fee simple to the land on which the same stands?

"Yes. . . .

"Is there any incumbrance?

"_____

"If any, give total amount and to whom payable.

"_____"

The policy contains the following: "Reference is made to the application and description on file in this office and indorsed upon this policy which hereby forms a part of this policy, and is, and shall be a continuing warranty by the insured."

The policy contains these further provisions:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the

Hughes v. Millers' Mut. Fire Ins. Co.

property be not truly stated herein; or in case of any fraud
or false swearing by the insured touching any matter re-
lating to this insurance or the subject thereof, whether be-
fore or after a loss.

"This entire policy  .  .  .   shall be void  .·  .  .    if
the interest of the insured be other than unconditional and
sole ownership; or if the subject of insurance be a build-
ing on ground not owned by the insured in fee simple; or
if the subject of insurance be personal property and be or
become incumbered by a chattel mortgage."

It appears that at the time this policy was issued there
was in existence a trust deed by which the complainant had
conveyed the real estate here involved to protect certain
gentlemen who had secured an indebtedness for her amount-
ing to $1,500.

The defendant insists that the statement contained in
complainant's application that she had title in fee simple
to this land was accordingly false; that it was misled by
her failure to answer the questions in the application as
to incumbrances, assuming from her silence that no in-
cumbrances existed; that by the language of the policy here-
tofore quoted all statements in the application were made
warranties; and that it was therefore released from lia-
bility on this policy.

We think the defendant had no right to assume that the
property was clear of incumbrance by reason of the fail-
ure of the complainant to answer the questions relating
to incumbrances in the application.   On the contrary, it
would seem that, having answered all the other questions,
her omission to answer these questions should have sharp-
ly challenged the attention of defendant.   It has been well
decided in other jurisdictions that—"A failure to fill in a

blank calling for the amount of the incumbrance is neither an affirmance nor denial of the existence of an incumbrance; and the same is true where the insured draws a line with his pen through a question as to incumbrances." 26 C. J., 183; *Parker* v. *Otsego County Farmers' Co-op. F. Ins. Co.,* 168 N. Y., 655, 61 N. E., 1132, affirming 47 App. Div., 204, 62 N. Y. Supp., 199; *Jersey City Ins. Co.* v. *Carson,* 44 N. J. Law, 210.

We are of opinion, moreover, that the statement in the application by complainant that she had title in fee simple to this property was not a false statement, although the property was mortgaged. She did own the entire title to the property subject to the mortgage. That is to say, she owned the entire equitable title. The deed under which she held conveyed the whole estate to her, not a part of the property, not a life estate, not a fee determinable. A fee-simple estate may be either legal or equitable. It is the largest estate in land that the law recognizes. It may be incumbered, yet still be a fee-simple estate.

The defendant recognized that the question contained in the application as to whether the estate was in fee simple did not cover the matter of incumbrances, for it followed this question with others specially relating to incumbrances.

The conclusions just expressed find abundant support in the authorities.

In an Alabama case the insured was in possession of the land under a bond of the vendor to make title upon full payment of the purchase money. The policy provided it should be void if the building insured was on ground "not owned by the insured in fee simple." Payment of the pol-

icy was resisted on the theory that the insured did not own the property in fee simple, and the court said:

"The term 'fee simple' has never been used to distinguish between legal and equitable estates. It is used to denote the quantity or duration of estates—whether the enjoyment is limited or unlimited in point of continuance or duration. It defines the largest estate in land known to the law. It is an estate of inheritance unlimited in duration, descendible to all the heirs alike of the owner to the remotest generations. It may be of a legal or equitable nature. If of the latter, the legal holder is a mere trustee for the equitable, who is the real owner, and, restrained by no provision of the trust, in cases not within the statute of uses, may at any time be compelled to execute the legal estate in him. It was well recognized, that fee-simple estates, by that name, were created by deeds of bargain and sale and covenants to stand seised to uses, when, before the effect of the statute of uses upon them, those forms of conveyance were inoperative to transfer the legal title— when they created only an equity in the bargainee or covenantee. And Chancellor Kent says that prior to the statute of uses, the fee, in the view of a court of chancery, passed, by reason of the consideration, in a bargain and sale, or covenant to stand seised to uses, without any express limitation to the heirs—such a limitation being, as is well known, at common law, necessary to the creation of a fee simple, cognizable in a court of law. See 4 Kent's Com., pp. 5, 6. We hold that Mrs. Loventhal was the owner in fee simple within the meaning of the policy." *Loventhal* v. *Home Ins. Co.,* 112 Ala., 108, 20 South., 419, 33 L. R. A., 258, 57 Am. St. Rep., 17.

The same result was reached in a Michigan case where there was a stipulation avoiding the policy in case the insured was not the sole and unconditional owner of the land on which the building stood in fee simple. There the insured was in possession under a contract of purchase from the owner in fee and had paid part of the purchase money. *Dupreau* v. *Hibernia Ins. Co.,* 76 Mich., 615, 43 N. W., 585, 5 L. R. A., 671.

In the Pennsylvania case the plaintiff insured certain buildings on land which he had contracted to purchase. He had made no payment, but had erected a sawmill and made other improvements. The policy was conditioned to be void if assured's interest was other than the entire unconditional and sole ownership, or if the insured property · was a building on land not owned by him in fee simple. It was held that the interest of the insured met the condition. The court said:

"This provision of the policy does not necessarily distinguish between the legal and the equitable estate. If the title is conditional or contingent, if it is for years only, or for life, or in common, it is not the entire, unconditional, and sole ownership." But whether the title be legal or equitable, the interest of the assured is the same, so far as it affects the contract of insurance. "The purpose of this provision is, to prevent a party who holds an undivided or contingent but insurable interest in property, from appropriating to his own use the proceeds of a policy, taken upon the valuation of the entire and unconditional title, as if he were the sole owner, and to remove from him the temptation to perpetrate fraud and crime. For without this, a person might thus be enabled to exceed the measure of an actual indemnity. But where the entire loss, if the

property is destroyed by fire, must fall upon the party insured, the reason and purpose of this provision does not seem to exist; and in the absence of any particular inquiry as to the specific nature of the title, or of any express stipulation in the policy that the insured held the legal or equitable title, either being available to secure an entire unconditional and sole ownership, the provision referred to can, we think, have no force to defeat the plaintiff's recovery in this case." *Imperial, etc., Ins. Co.* v. *Dunham,* 117 Pa., 460, 12 Atl., 668, 2 Am. St. Rep., 686.

"The existence of a mortgage or other lien upon property has been quite uniformly held not to amount, prior to foreclosure, to a breach of a condition in a policy that the insured's interest shall be the entire, sole, and unconditional ownership, or that his title shall be absolute or in fee simple, although a contrary rule is asserted in some cases." 26 C. J., 177.

We have then a case where the insured has made no false statement in her application, and the only remaining question is whether her failure to disclose the existence of an incumbrance on this property is sufficient to avoid it under its terms. This is no longer an open question in Tennessee. In many decisions this court has held that the existence of a mortgage, vendor's lien, or retained title on insured property was not material to the risk, and a failure to disclose such an incumbrance would not avoid the policy, even though it was conditioned on the insured being the sole and unconditional owner. *Delahay* v. *Memphis Ins. Co.,* 27 Tenn. (8 Humph.), 684; *Manhattan Ins. Co.* v. *Barker,* 54 Tenn. (7 Heisk.), 503; *Insurance Co.* v. *Crockett,* 75 Tenn. (7 Lea), 725; *Light* v. *Insurance Co.,*

146 Tenn.—12

105 Tenn., 480, 58 S. W., 851; *Insurance Co.* v. *Estes,* 106 Tenn., 472, 62 S. W., 149, 52 L. R. A., 915, 82 Am. St. Rep., 892.

It is urged for the defendant that these cases are based on section 22, chapter 160, Acts of 1895; Thompson's-Shannon's Code, section 3306, viz.:

"No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter represented increased the risk of loss."

It is said that defendant is a mutual or assessment insurance company, and that this statutory provision does not apply to it under the holding of this court in *Insurance Co.* v. *Whitaker,* 112 Tenn., 151, 79 S. W., 119, 64 L. R. A., 451, 105 Am. St. Rep., 916.

The statute quoted is referred to in *Light* v. *Insurance Co.,* 105 Tenn., 480, 58 S. W., 851, but the earlier cases were decided before this statute was enacted. The statute deals with misrepresentations and warranties. No statute was necessary in cases where there was a mere failure to disclose. Silence always must have been about a matter material to the risk, at least in this jurisdiction, to affect the liability of the insurer.

Some other questions are made which do not require discussion. We see no error in the decree of the chancellor, and it will be affirmed.