T. B. MILLER and Wife, NANCY MILLER, Plaintiffs-in-Error v. MONTICELLO INSURANCE COMPANY, Defendant-in-Error.—361 S. W. (2d) 496.

Western Division at Jackson. July 28, 1961.

Certiorari Denied by Supreme Court October 20, 1961.

John L. Williams, Huntingdon, for plaintiffs in error.

Dwayne D. Maddox, Huntingdon, for defendant in error.

CARNEY, J. The plaintiffs-in-error, T. B. Miller and wife, Nancy Miller, brought suit against the defendant, Monticello Insurance Company, for the value of a mobile welding machine which was destroyed by fire on September 8, 1959. Plaintiffs' declaration alleged that the unit was insured against loss by fire under defendant's policy issued June 24, 1959, covering all of plaintiffs' machinery and equipment used in the operation of a machine shop and that the defendant's agent at the time the policy was issued assured plaintiffs "that all of the plaintiffs' equipment would be completely covered at all times." Oyer of the policy was prayed by the defendant and profert was made. The defendant filed only a general plea of nil debit.

At the conclusion of the plaintiffs' proof the defendant moved for a directed verdict which was overruled by the Trial Judge. The defendant offered no proof and the jury returned a verdict of $1,200.00 in favor of the plaintiffs. Judgment was entered.

Defendant's motion for a new trial was sustained and plaintiffs' suit dismissed by the Trial Judge under the authority of Alfred v. Bankers' and Shippers' Insurance Co., 167 Tenn. 278, 68 S. W. (2d) 941. The plaintiffs

below, T. B. Miller and wife, have perfected their appeal in error to this court.

The mobile welding unit became ignited and was destroyed by fire as a result of the overspilling of gasoline. At the time of its destruction it was being used at a gravel pit near Camden, Tennessee, which is some 17 miles from Bruceton, Tennessee, where plaintiffs' welding and machine shop is located. It was the contention of the defendant that the welding unit was not insured under the policy because at the time of its destruction by fire it was not located at the place described and provided for in the policy.

The pertinent provisions of the policy are as follows:

"IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the premium above specified, this Company, for the term of five years from June 24, 1959 At Noon (Standard Time) to June 24, 1964 At Noon (Standard Time) at location of property involved, to an amount not exceeding the amount(s) above specified, does insure

"T. B. MILLER & WIFE, NANCY
and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of

business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Item
No.            . . . . . . . . . .

1        $10,000.00  On machinery in a one story, appr. roof, B-E building, occupied as a machine shop and located Bk. 309, Map 132 &-R34, 7A, S/S Hwy 70 (Lexington St.), Bruceton, Tennessee''

According to the testimony of Mr. Miller, in 1949 he obtained a loan from the Bank of Huntingdon, Huntingdon, Tennessee, on his shop equipment which included the mobile welding machine. It was necessary that he obtain fire insurance on this equipment for the protection of himself and the Bank.

Accordingly, he requested his neighbor, the defendant's agent, Mr. W. E. Brower, to write the insurance for him. Mr. Brower operated an insurance agency in Bruceton, Tennessee, in conjunction with his funeral home. His place of business was only two blocks from Mr. Miller's

machine shop. Mr. Miller had bought other insurance from Mr. Brower.

The policy was issued with a loss payable clause in favor of the Bank of Huntingdon, Huntingdon, Tennessee, and delivered by Mr. Brower to the Bank at Huntingdon. On June 24, 1959, Mr. Brower issued a renewal policy with same coverage and insuring the same property. The renewal policy was also delivered to the Bank of Huntingdon.

Mr. Miller never had any loss prior to the loss of the welding machine and never saw the original policy nor the renewal policy until after the welding machine had been destroyed. Mr. Miller testified without objection that Mr. Brower assured him that his equipment was covered at all times and places and never called his attention to the fact that his equipment was not insured when away from his regular place of business.

The agent, Mr. Brower, corroborated Mr. Miller's testimony to a considerable degree and contradicted him only slightly. Mr. Brower testified that he was fully familiar with the operation of Miller's machine welding shop; and that he knew about the portable welding machine being used both in and away from the shop; and that when not in use it was kept just outside the machine shop building.

He further testified that initially Mr. Miller asked for coverage and that he prepared the policy, mailed it to the Bank of Huntingdon and told Mr. Miller that he was covered. After the welding unit burned and Mr. Miller reported his loss to him, Mr. Brower called the adjustment company to send an adjuster down.

On cross-examination Mr. Brower testified that he did not have authority to issue any policy other than the standard policy which was issued in the present case; that he did not recall ever telling Mr. Miller that the welding machine itself was covered under the policy; that so far as he knew he did not have any printed form which would provide coverage under a fire policy for a portable welding machine used away from the premises.

His Honor the Trial Judge interrogated Mr. Brower as follows:

"WITNESS: W. E. BROWER

"Questions asked by the Court.

"Q—158 Was there any testimony on your behalf about having knowledge that this portable welding machine was used away from the place of business?

"A—158 Yes Sir. I knew it was used away from the place of business.

"Q—159 What did you tell Mr. Miller about the coverage?

"A—159 He just told me to write him the fastest coverage we could. We did not go into detail in any way * * * on any one piece of machinery or anything.

"Q—160 Did he ask you for complete coverage on his equipment?

"A—160 He said that he needed coverage as fast as he could get it so that he could obtain his loan."

Mr. Miller testified that the welding unit cost him $1,400.00 new and that the same machine purchased new

at the time of the trial would cost $1,800.00. The jury set plaintiffs' damages at $1,200.00.

At first blush it would appear that His Honor the Trial Judge was correct; that this case is controlled by the case of Alfred v. Bankers' and Shippers' Insurance Co., 167 Tenn. 278, 68 S. W. (2d) 941 and that the plaintiffs should have brought their suit in Chancery Court for a reformation of the policy. However, upon closer examination of the declaration and the testimony of the witnesses it appears to us that the plaintiffs' suit was properly brought in the Circuit Court even though Chancery Court would also have had jurisdiction.

Plaintiffs contend that the defendant's agent, W. E. Brower, issued a fire insurance policy giving the plaintiffs less than the full coverage which they sought to purchase and lulled them into a sense of false security by assuring them that all of their welding and machine shop equipment was fully covered against loss by fire at all times. The defendant insurance company does not deny that the welding unit was a part of plaintiffs' equipment and machinery insured against loss by fire under the policy issued by its agent, Mr. Brower. Its only defense is that the policy as issued by Mr. Brower limits coverage of the welding unit against loss by fire to the time it is actually inside the building described in the policy. This restriction or limitation of coverage is one which the defendant's agent could have waived. Maryland Casualty Co. v. McTyier, 1924, 150 Tenn. 691, 266 S. W. 767, 48 A. L. R. 1168.

The defendant's agent, Mr. Brower, did not contend that the plaintiffs had any actual knowledge that the welding unit or any of the other equipment was not

covered against loss by fire unless destroyed or damaged while inside the building.

Under these circumstances we think a jury might well find that the defendant's agent, Mr. Brower, and therefore the company itself, waived the restriction or limitation of coverage and also lulled Mr. and Mrs. Miller into a sense of false security by leaving them under the impression that they were fully covered under the terms of the policy which was issued.

If such facts are true the company is estopped to rely upon this restriction or limitation of coverage in the policy as a defense. Estoppel does not have to be pleaded eo nomine where the facts upon which its rests appear. Maryland Casualty Co. v. McTyier, supra, pp. 701 and 702, 266 S. W. 767.

Therefore we feel constrained to hold that this case is controlled by the decision of the Supreme Court of Tennessee in the case of Hayes & Sons v. Stuyvesant Insurance Co., 1952, 194 Tenn. 35, 250 S. W. (2d) 7, and of the Court of Appeals in the case of Henry v. Southern Fire and Casualty Co., 1958, 46 Tenn. App. 335, 330 S. W. (2d) 18. We think His Honor the Trial Judge properly submitted the case to the jury and improperly sustained defendant's motion for a new trial and directed verdict.

Therefore, the judgment of the lower court will be reversed and the cause remanded to the court below for a new trial. The costs will be taxed against the defendant-in-error, Monticello Insurance Company.

Avery, P. J. (W. S.), and Bejach, J., concur.